UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BLACKFLY INVESTMENTS, LLC, dba MOLECULAR TESTING LABS, a Washington limited liability company,

Plaintiff,

v.

DS LAB CONSULTING INC., a New Jersey corporation; Dan Samia, individually, and the marital community composed of DAN SAMIA and JANE SAMIA,

Defendants.

Civil Action No. :

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiff Blackfly Investments, LLC, dba Molecular Testing Labs (hereinafter "MTL") for its Complaint against Defendants alleges as follows:

### I. PARTIES

1.      Plaintiff Blackfly Investments, LLC, dba Molecular Testing Labs ("MTL"), is a Washington limited liability company with offices in Vancouver, Washington, from which it conducts a nationwide medical diagnostic testing business, including within the state of New Jersey.

2.      Defendant DS Lab Consulting Inc. ("DS Lab") is a New Jersey corporation with offices, on information and belief, in Ocean City, New Jersey. Defendant Dan Samia ("Samia") is the sole or dominant owner of DS Lab.

3.      Defendant Samia is a resident of Ocean City, New Jersey and was, until August 30, 2024, an employee of MTL. Defendant Samia is a married to Jane Samia, and thus the marital community of Dan Samia and Jane Samia is a defendant as well.  All of the acts of Samia were taken in the interests of his individual estate, and his marital estate.

### II. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction by reason of diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1) because plaintiff and defendants are citizens of different states and because the amount in controversy in this matter exceeds $75,000.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and pursuant to 28 U.S.C. §1391(b)(3), because defendants are subject to this Court's personal jurisdiction with respect to this action.

### III.  FACTS GIVING RISE TO RELIEF

6.  MTL and DS Lab conducted business together under an Independent Sales Representative Agreement ("Sales Agreement") from April 1, 2017 and June 21, 2021, with MTL and DS Lab then entering into a Termination Agreement on June 21, 2021 ("Termination Agreement"), which Terminated the Sales Agreement. Notwithstanding the Termination Agreement, MTL and DS Lab continued to work together in substantially the same manner as under the Sales Agreement, as it was the intention of MTL and DS Lab to renegotiate a new form of sales agreement.

7.  Additionally, in connection with the Termination Agreement, Samia became an employee of MTL. On or about June 16, 2021, MTL and Samia entered into three agreements: an Offer of Employment Agreement ("Employment Agreement"), an Employee Non-Compete Agreement attached here as **Exhibit A** ("Non-Compete Agreement"), and a Confidentiality and Proprietary Rights Agreement attached here as **Exhibit B** ("Confidentiality and IP Agreement,"). Only the Confidentiality and IP Agreement and the Non-Compete Agreement are at issue in this litigation.

8.  Samia was a highly compensated individual at MTL, with a base salary of $250,000. Samia held a very important role at MTL and helped to develop and had access to MTL trade secrets and other highly confidential information belonging to MTL under the terms of the Confidentiality and IP Agreement.

9.  The confidentiality provisions and the non-competition and non-solicitation provisions of the Confidentiality and IP Agreement and the Non-Compete Agreement were narrowly tailored to the circumstances of Samia's employment. Under §1(a) of the Confidentiality and IP Agreement, Samia agreed to the following definition of Confidential Information: "*The Employee understands and acknowledges that during the course of employment by the Employer he or she will have access to and learn about confidential, secret and proprietary documents, materials, data and other information, in*

*tangible and intangible form, of and relating to the Employer and its businesses and existing and prospective customers, suppliers, investors, and other associated parties ("Confidential Information")."*

10.     Samia agreed in the Confidentiality and IP Agreement that he would keep all Confidential Information in strict confidence and only use such Confidential Information in furtherance of his duties as an employee of MTL.

11.     Samia also consented and agreed in Section 7 of the Confidentiality and IP Agreement that MTL would be entitled to seek, in addition to all other remedies, "*a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security*."

12.     In Section 2(b) of the Non-Compete Agreement, defendant Samia agreed to the following reasonably tailored non-competition and non-solicitation provisions: "*Because of Employer's legitimate business interest as described in this Agreement and the good and valuable consideration offered to the Employee, the receipt and sufficiency of which is acknowledged, during the term of Employee's employment and for twelve (12) months to run consecutively, beginning on the last day of the Employee's employment with the Employer, whether terminated for any reason or no reason, by the Employee or the Employer (the "Restricted Period"), the Employee agrees and covenants not to engage in prohibited Activity within the same territory Employee provided services during his or her employment, and any territory in which Employer conducts business. ("Restricted Territory). For purposes of this non-compete clause, "Prohibited Activity is activity in which the Employee contributes the Employee's knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, contractor, agent, partner, director, stockholder, officer, intern, or any other similar capacity to an entity engaged in the same or similar business as the Employer within the Restricted Territory. Prohibited Activity also includes activity that may require or inevitably require disclosure of trade secrets, proprietary information, or Confidential Information."*

13.     Samia also consented and agreed in Section 5 of the Non-Compete Agreement that MTL would be entitled to seek, in addition to all other remedies, "*a temporary or permanent injunction or*

*other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.*"

14.    MTL has a reasonable belief that the substantial potential harms alleged in the foregoing paragraph are likely to occur in the near future because of statements by Samia to personnel of MTL. Specifically, in the context of discussions on August 28 and August 29 of 2024 to amicably conclude Samia's employment with MTL, Samia said words to the effect that, "*MTL has more to lose than he does*" and that unless MTL pays him $3 million, he will "*start a competing company and take all the remote UTI labs business away from MTL.*" These extortionate threats constitute clear and credible evidence that defendant Samia, possibly to be aided and abetted tortiously by DS Lab, intends to violate the critical provisions of the Confidentiality and IP Agreement and the Non-Compete Agreement, all to great harm to MTL.

15.    The relief requested by plaintiff MTL is narrow. Plaintiff merely seeks (i) declaratory judgement relief finding that defendant Samia's threatened solicitation of MTL's current or prospective customers away from MTL in violation of the reasonably tailored provisions of the Confidentiality and IP Agreement and the Non-Compete Agreement between plaintiff MTL and defendant Samia would violate his obligations under those agreements and that DS Lab's participation in such conduct would constitute tortious interference on the part of defendant DS Lab and (ii) that the defendants be enjoined from harming MTL's business by soliciting MTL's current or prospective customers or employees away from it in violation of defendant Samia's contractual obligations not to do so, and from harming MTL's businesses by misappropriating or otherwise misusing MTL's confidential information and trade secrets to solicit MTL's customers or employees away from it in violation of Samia's obligations not to do so.

16.    MTL fears that defendants will carry out their threatened, wrongful behavior to plaintiff MTL's substantial harm if an injunction is not entered to prevent the same from occurring.

## IV.  CAUSES OF ACTION

**A.    CAUSE OF ACTION 1:  DECLARATORY JUDGMENT**

Plaintiff realleges as if stated herein in full paragraphs 1 through 15.

17. Based on defendant Samia's explicit threats to take actions that would violate the terms of both the Confidentiality and IP Agreement and the Non-Compete Agreement, plaintiff requests declaratory judgment relief in the form of an Order of this Court stating that defendant Samia's threatened solicitation of MTL's current or prospective customers away from MTL in violation of the reasonably tailored provisions of the Confidentiality and IP Agreement and the Non-Compete Agreement between plaintiff MTL and defendant Samia would constitute violations of his obligations under those agreements and that DS Lab's participation in such conduct would constitute tortious interference on the part of defendant DS Lab, and that such conduct by defendants Samia and DS Lab would entitle plaintiff MTL to damages for the harms caused by such conduct.

**B.    CAUSE OF ACTION 2:  PERMANENT INJUNCTION**

Plaintiff realleges as if stated herein in full paragraphs 1 through 17.

18. Based on defendant Samia's explicit threats to take actions that would violate the terms of both the Confidentiality and IP Agreement and the Non-Compete Agreement, plaintiff requests that this Court issue a permanent injunction prohibiting defendant Samia and DS Lab from soliciting MTL's current or prospective customers away from MTL in violation of the Confidentiality and IP Agreement and the Non-Compete Agreement between plaintiff MTL and defendant Samia.

**V.  PRAYER FOR RELIEF**

WHEREFORE, MTL prays for entry of an Order granting the following relief against defendants Samia and DS Lab, under the causes of action alleged above:

1. A declaration of this Court stating that any solicitation by Samia or DS Lab of MTL's current or prospective customers would constitute violations of Samias obligations under the Confidentiality and IP Agreement and the Non-Compete Agreement between plaintiff MTL and defendant Samia, and that DS Lab's participation in such conduct would constitute tortious interference with such agreements on the part of defendant DS Lab, and that such conduct by defendants Samia and DS Lab would entitle plaintiff MTL to damages for the harms caused by such conduct;

2.    A permanent injunction prohibiting defendant Samia and DS Lab from soliciting MTL's current or prospective customers MTL in violation of the Confidentiality and IP Agreement and the Non-Compete Agreement between plaintiff MTL and defendant Samia.

3.    An award of prejudgment interest, reasonable fees, costs and expenses in bringing this action; and

5.    Such further relief as the Court deems just and equitable.

DATED

MATT SIMON LAW

*Matthew C. Simon, Esq.*
Mathew C. Simon, Esq.
Attorneys for the Plaintiff.

EXHIBIT A

CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

EXHIBIT B

EMPLOYEE NON-COMPETE AGREEMENT